IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00542-KLM

STEVEN ALAN GUILLAR,

     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court[1] on the **Social Security Administrative Record**
[#11],[2] filed April 26, 2019, in support of Plaintiff's Complaint [#1] seeking review of the
decision of Defendant Andrew Saul, Commissioner of the Social Security Administration,
("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits
pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for
supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381
et seq. On June 5, 2019, Plaintiff filed an Opening Brief [#18] (the "Brief"). Defendant filed
a Response [#19] in opposition, and Plaintiff filed a Reply [#20]. The Court has jurisdiction
to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The

_____

     [1] The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#13, #21].

     [2] "[#11]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Order.

Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

Plaintiff alleges that he became disabled at the age of forty-four on November 26, 2015. Tr. 23, 30.[3] On February 16 and 17, 2016, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI. Tr. 23. On February 21, 2018, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 32.

The ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2017, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since November 26, 2015, the alleged onset date. Tr. 25. The ALJ found that Plaintiff suffers from one severe impairment: Multiple Sclerosis ("MS"). Tr. 25. However, the ALJ also found that Plaintiff's impairment did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 26. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [T]he claimant is limited to being able to stand or walk for one hour at a time for a total of two hours out of an eight hour work day. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can frequently reach, handle, finger, feel, push and pull, and operate foot

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11 through 11-8 by the sequential transcript numbers instead of the separate docket numbers.

controls.  He can occasionally operate a motor vehicle.  He can never be exposed to extreme heat or extreme cold; cannot operate vibrating equipment; and can never be exposed to hazards, such as unprotected heights, heavy machinery or moving mechanical parts.  The claimant can carry out simple and routine tasks, make simple work-related decisions, tolerate occasional changes in routine work duties and tasks, and occasional interaction with the public.

Tr. 26.  Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform no past relevant work, but that he was able to perform the representative occupations of address clerk, call out operator, microfilm document preparer, and tube clerk.  Tr. 30-31.  She therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 32.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability."  A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The

existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

**B.      Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff makes six arguments in support of his assertion that the ALJ committed reversible error.  First, Plaintiff argues that the ALJ "failed in her duty to develop the record by failing adequately to investigate [Plaintiff's] cognitive complaints and to order a psychological consultative examination to investigate his cognitive functioning."  *Brief* [#18] at 21-23.   Second, Plaintiff argues that the ALJ "erred when she failed to address [Plaintiff's] cervical spine issues and did not find that they constituted a severe impairment

separate from his Multiple Sclerosis (MS)" and that she "failed to mitigate that error when she failed to adequately address [Plaintiff's] neck and back problems at step four." *Id.* at 23-25. Third, Plaintiff argues that the ALJ "failed adequately to consider and evaluate whether [Plaintiff's] impairment of Multiple Sclerosis met 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.09 or, in combination with his back and neck impairment, equaled that listing, and/or failed to explain any evaluation in her decision." *Id.* at 25-27. Fourth, Plaintiff argues that the ALJ "erred by failing to make adequate findings at step four regarding the functional effects of [Plaintiff's] subjective symptoms, including pain, and by assigning RFC restrictions related only to his objective symptoms." *Id.* at 27-31. Fifth, Plaintiff argues that the "findings of the ALJ regarding the weight to be afforded the opinion evidence did not comply with the regulations regarding the opinion of a treating physician, are not based on substantial evidence, and do not address the relevant factors set forth in the regulations." *Id.* at 31-34. Sixth, Plaintiff argues that the ALJ "erred because she failed to find that [Plaintiff] was disabled even though the Commissioner did not present substantial evidence that the jobs the vocational expert listed as being available to [Plaintiff] existed in significant numbers in the economy." *Id.* at 34-36.

## A. Neck and Back Impairments

Three of Plaintiff's arguments stem directly from his neck and back impairments, and the Court addresses those arguments first.

### 1. Step Two

Plaintiff argues that the ALJ "erred when she failed to address [Plaintiff's] cervical spine issues and did not find that they constituted a severe impairment separate from his Multiple Sclerosis (MS) . . . ." *Brief* at 23-25.

The Tenth Circuit Court of Appeals has addressed how an ALJ's purported error at step two in failing to find a specific impairment to be "severe" is harmless so long as the ALJ found at least one other impairment to be "severe" and thus proceeded to later steps of her analysis:

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)[; see also 20 C.F.R. § 416.920(c)]. A claimant must make only a *de minimis* showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a *severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added)[; *see also* 20 C.F.R. § 416.920(a)(4)(ii)]. By its plain terms, the regulation requires a claimant to show only "*a* severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe. Here, the ALJ found six other impairments severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In the instant case, the ALJ found one other impairment to be severe, i.e. Multiple Sclerosis. Tr. 25. Thus, the ALJ found that Plaintiff could not conclusively be denied benefits at step two and proceeded to steps three and four of her analysis. Therefore, Plaintiff's argument that the ALJ erred at step two "fails as a matter of law." *Allman*, 813 F.3d at 1330.

## 2. Step Three

At step three, Plaintiff argues that the ALJ "failed adequately to consider and evaluate whether [Plaintiff's] impairment of Multiple Sclerosis met 20 C.F.R. Part 404,

Subpart P, Appendix 1, Listing 11.09 or, in combination with his back and neck impairment, equaled that listing, and/or failed to explain any evaluation in her decision." *Brief* [#18] at 25-27. To find that a claimant meets Listing 11.09, his impairment(s) must meet the requirements of either Paragraph A or Paragraph B. Although Plaintiff argues that he meets the requirements of both Paragraph A and Paragraph B, the Court in this section of its analysis only addresses Paragraph A because Plaintiff's argument there is predicated on his neck and back impairments.

The requirements of Paragraph A are as follows: "Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. . . ." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.09A. As relevant here, at step three of her analysis, the ALJ stated: "The evidence does not establish the requisites for Listing 11.09, Multiple Sclerosis, such as the disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." Tr. 26.

Plaintiff concedes that his MS symptoms by themselves do not meet or equal the criteria listed in Paragraph A but argues that they equal the criteria when viewed in combination with his back and neck impairments. *Brief* [#18] at 26. Plaintiff's argument regarding Paragraph A is barebones, however, given that the totality of the argument here is that Plaintiff "is confident that had the ALJ considered his separate back and neck impairment, and the remitting and recurring nature of his MS impairment, he has presented evidence of an 'extreme' physical impairment." *Id.* at 27.

For example, Plaintiff has not stated which two (or more) extremities have extreme

limitations to meet the requirements of Paragraph A: "Disorganization of motor function means interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00D1.

Further, Plaintiff has not specifically argued which extreme limitation(s) he believes he meets. First, Plaintiff could show an extreme limitation in the ability to stand up from a seated position by providing evidence that "once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00D2(a). Second, Plaintiff could show an extreme limitation in the ability to balance while standing or walking by providing evidence that he is "unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00D2(b). Third, Plaintiff could show an extreme limitation in the use of his upper extremities by providing evidence that he has "a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits [his] ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00D2(c).

Plaintiff fails to direct the Court's attention to the relevant evidence underlying his assertion that he meets the Listing's definitions of any of these extreme impairments. To be sure, the ALJ's discussion here was barebones as well; nevertheless, to succeed in his

argument, all Plaintiff had to do here was direct the Court's attention to some evidence that was apparently overlooked by the ALJ of an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities. Even though the Court will not evaluate the evidence in the first instance, a task which is the job of the ALJ, Plaintiff must show the Court that there is sufficient evidence underlying his argument such that the case should be remanded for the ALJ's consideration. Plaintiff has simply not done so here, and the Court will not manufacture support for Plaintiff's argument for him. *See, e.g.*, *Castillo v. Colvin*, No. 14-978 SCY, 2016 WL 4425729, at *4 (D.N.M. Jan. 5, 2016).

Accordingly, the Court finds that the ALJ did not commit reversible error at step three of her analysis with respect to Paragraph A of Listing 11.09.

### 3. Step Four

Plaintiff argues that the ALJ "failed to adequately address [Plaintiff's] neck and back problems at step four." *Brief* [#18] at 23-25. Plaintiff's argument here is rather unclear. Plaintiff states that the ALJ "did not consider [the neck and back impairments] at all at Step Four." *Id.* at 24. If true, this might be grounds for reversal. *See, e.g.*, *Farrill v. Astrue*, 486 F. App'x 711, 712-13 (10th Cir. 2012) (reversing because the ALJ neglected to discuss "non-severe" but medically determinable mental impairments as part of the RFC determination at step four).

However, the ALJ thoroughly discussed the evidence underlying these impairments in her discussion at step four. For example, the ALJ stated:

> The claimant testified that his legs and lower back hurt when shopping so he takes his pain medicine beforehand and he leans on the cart. . . . Upon review of cervical MRI scans from 2009 and 2014, there were two disc

bulges with mild narrowing of the spinal canal at C5/6 and C6/7 without any cord signal abnormality associated at this region. However on the 2014 cervical MRI scan, there are two lesions in the upper cervical cord, one was slightly expansive cord at C3 consistent with new disease activity. The disc bulges have not worsened although there could be some foraminal narrowing to the right. . . . Upon general examination throughout the claimant's treatment records, he was found with . . . no weakness of neck flexion or extension . . . . In April of 2016 . . . he was walking five blocks to the mailbox daily, but felt that he was limited by his back pain and was trying to do stretches. . . . In January of 2017 . . . the claimant stated that he has severe spasms in his back with standing any length of time . . . . In January of 2017 the claimant's neurologist added the medication Baclofen for his back spasms. Furthermore, diagnostic testing has shown that the claimant has two disc bulges and greater than ten periventricular lesions . . . .

Tr. 27-30 (internal citations omitted).

Other than a citation to Plaintiff's March 20, 2016 Adult Disability Report where Plaintiff included "a herniated disc" as a condition that negatively impacted his ability to work, Plaintiff only cites to a January 2016 medical record showing that "along with the cord lesions and demyelination commonly associated with MS, [Plaintiff] suffered from cord protrusion, mild stenosis at C6-7 and areas of C5-6, and severe right foraminal stenosis at C5-6." *Brief* [#18] at 24 (citing Tr. 273). Tr. 273 is part of Exhibit B1F, which the ALJ did not cite. However, the entirety of Exhibit B1F is duplicated at Exhibit B6F, which the ALJ did thoroughly review in her discussion. Tr. 28; *compare* Tr. 266-275 (Ex. B1F) *with* Tr. 357-364 (Ex. B6F).

An ALJ is not required to discuss every piece of evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, "[t]he record must demonstrate that the ALJ considered all of the evidence[.]" *Id.* at 1010. Here, the record shows that she did so. Although the ALJ did not cite to the specific page of this medical record to which Plaintiff cites, it is clear that the ALJ reviewed the entirely of this record. *See* Tr. 28 (citing

pages immediately preceding and immediately following this page of the record). Further, as recited above, the ALJ repeatedly addressed the evidence located throughout the record pertaining to Plaintiff's neck and back impairments, including issues related to stenosis and protrusion. *See, e.g.*, Tr. 27 (discussing "narrowing of the spinal canal" and "foraminal narrowing to the right"). In fact, the ALJ only gave partial weight to the opinion of consultative examiner Stanley Ginsburg because of evidence of disc bulges, thereby limiting Plaintiff to the sedentary exertional level with additional limitations. Tr. 29.

Thus, in the absence of any more specific argument regarding how the ALJ erred at step four in connection with Plaintiff's neck and back impairments, the Court cannot find that the ALJ committed reversible error on this point.

**B.     Development of the Record**

The Court next turns to Plaintiff's argument that the ALJ "failed in her duty to develop the record by failing adequately to investigate [Plaintiff's] cognitive complaints and to order a psychological consultative examination to investigate his cognitive functioning." *Brief* [#18] at 21-23.

"A social-security claimant bears the burden of proving [he] is disabled . . . ." *Todorova v. Commissioner, SSA*, 762 F. App'x 510, 514 (10th Cir. 2019) (citing *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008)). The ALJ bears the burden of ensuring "that an adequate record is developed during the disability hearing consistent with the issues raised." *Todorova*, 762 F. App'x at 514 (quoting *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)). "However, "an ALJ's duty to develop the record is *not* unqualified." *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). The ALJ's duty of inquiry is not "a panacea for claimants," requiring "reversal in any matter where the ALJ fails to exhaust

every potential line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). "Several preconditions inform an ALJ's duty to develop the administrative record." *Wall*, 561 F.3d at 1063. These preconditions are essentially as follows: (1) If the claimant was represented by counsel, did counsel raise the issue with the ALJ regarding the need for a consultative examination? (2) If not, did the claimant otherwise somehow raise the impairment issue with the ALJ at the hearing? (3) If so, is there objective medical evidence underlying that issue in the record which does or could support Plaintiff's statements? The Court addresses each of these questions in turn.

### 1. Whether the Claimant was Represented by Counsel at the Hearing

A social security proceeding is non-adversarial, *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), but it is not the ALJ's duty to become the claimant's advocate. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). Although the ALJ's "duty is heightened when the claimant is unrepresented," *id.*, "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins*, 113 F.3d at 1167. "Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*

Here, Plaintiff was represented at the hearing held before the ALJ on October 3, 2017. Tr. 36. Plaintiff's counsel did not request a psychological consultative examination at the hearing. "In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Hawkins*, 113 F.3d at 1168. Thus, the Court must determine whether the

-14-

need for a psychological consultative examination was clearly established in the record.

## 2. Whether the Issue Was Raised by Claimant at the Hearing

"Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial." *Hawkins*, 113 F.3d at 1167 (internal citations omitted). "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.*

Plaintiff bases his argument on statements he made at the hearing that he could not work because of concentration ("I get brain fog quite a bit." Tr. 47) ("I would talk to customers on the phone trying to sell product, and I would just totally forget what I was talking about to the point where I would lose business. I would lose sales. I just couldn't even keep my concentration on what I'm trying to sell. So, it started really affecting just me [sic] dealing with a customer." Tr. 48.), because of various types of self-control ("I would be more self-conscious if I'm slurring my words because I would slur my words every now and then. It got to the point where I would—if I'm really stressed, I would start walking away from my customer and I'm stumbling like I'm drunk. And that's just my MS. It just started really affecting me. So, it affected my sales." Tr. 49.), and because of occasional fainting spells (discussing blacking out once in about February 2017, Tr. 52, and once sometime prior to a July 20, 2016 medical appointment, Tr. 351). *Brief* [#18] at 22.

The Court notes that it is unclear from Plaintiff's argument why he believes the issue of fainting is connected to a psychological impairment. Similarly, at least based on Plaintiff's description and argument, it is unclear why Plaintiff believes the physical self-control issues of stumbling and slurring words are psychological rather than physical "effects of [his] neurological disease," i.e., MS. *Id.* Thus, it is not entirely clear why Plaintiff

-15-

believes a psychological consultative examination should have been ordered in connection with these issues. Regardless, the Court finds that, at a minimum, Plaintiff's statements regarding his concentration are sufficient to demonstrate that the "mental impairment [is] of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (emphasis in original).

### 3. Whether Objective Evidence Supports the Issue

"As is usual in the law, the extreme cases are easy to decide; the cases that fit clearly within the framework of the regulations give us little pause." *Hawkins*, 113 F.3d at 1167. "The difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." *Id.* That, essentially, is the situation here where Plaintiff has, at least in his Brief [#18], relied solely on Plaintiff's testimony to raise the possibility of a disabling condition which, by itself, is less than compelling.

"Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* "[T]he starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* The issue then becomes "what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further." *Hawkins*, 113 F.3d at 1166.

Although Plaintiff did not point to any objective medical evidence in his initial Brief [#18], he did so in his Reply [#20]. There, Plaintiff argued that "it is undisputed that

[Plaintiff's] objective medical imaging results showed white matter brain disease and spinal cord lesions which could affect cognitive functioning as well as produce other subjective disabling symptoms." *Reply* [#20] at 4. The records Plaintiff cites here are from January 13, 2016 MRIs of his cervical spine and brain. Tr. 273-74. Although they support Plaintiff's statements that he had white matter brain disease and spinal cord lesions, there is no indication from these records either that (a) Plaintiff was suffering from any cognitive deficits at this time or (b) that these findings were causing or even could cause any type of cognitive deficit. In other words, there is nothing in the record even tenuously connecting these physical findings to Plaintiff's alleged cognitive deficits. Further, Plaintiff has pointed to nowhere in the record where he complained of or otherwise discussed any perceived cognitive deficits during any examination with any medical personnel.

As noted above, "[i]n the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Hawkins*, 113 F.3d at 1168. The Court cannot find that Plaintiff has met his burden of showing that the need is "clearly established" in the record. The situation here is more akin to the one in *Powell v. Barnhart*, No. CIV 01-1380 LH/LFG, 2003 WL 27385456, at *11 (D.N.M. Mar. 13, 2003), where a claimant with Multiple Sclerosis argued also that the ALJ failed to adequately develop the record by not ordering a consultative psychiatric examination. The court held that the ALJ did not err in this regard, stating:

> [T]here are no clinical or objective findings to indicate that [the claimant] was diagnosed with major depression or anxiety during the period under consideration. Notably, she was not referred to, nor did she obtain mental health counseling during the pertinent time frame. While she was on some medication, it was not clear if she was taking [the medication] for sleep

problems or depression . . . , and/or how serious those problems were. There are few, if any, indicators in the medical records that she suffered from depression [during the relevant timeframe]. Indeed, the notations in some of the medical records reflect that she was doing well and feeling fairly well. [The claimant] did not come forward with objective medical evidence suggesting the need for a consultative examination. Moreover, because there was no evidence of actual mental disability in the medical record [during the relevant timeframe], the ALJ did not abuse her discretion in electing not to order a retrospective consulting examination. Under the circumstances, substantial evidence supports the ALJ's decision not to order a consultative examination.

*Powell*, 2003 WL 27385456, at *11.

"When the claimant has satisfied his . . . burden [of pointing to supportive medical evidence], it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Hawkins*, 113 F.3d at 1166. Generally, three situations require an ALJ to further develop the record by ordering a consultative examination: (1) where there is a direct conflict in the medical evidence requiring resolution, (2) where the medical evidence in the record is inconclusive, or (3) where additional tests are required to explain a diagnosis already contained in the record. *Id.* Because Plaintiff has not met his burden here showing that his need for a psychological consultative examination was "clearly established" in the record, the Court need not further determine whether an examination was necessary or helpful to resolve the issue of impairment. *Hawkins*, 113 F.3d at 1168.

Accordingly, the Court finds no reversible error in connection with the ALJ's development of the record.

## C.     Step Three

The Court returns to step three to adjudicate Plaintiff's argument regarding Paragraph B of Listing 11.09. As is relevant here, at step three of her analysis, the ALJ

stated: "The evidence does not establish the requisites for Listing 11.09, Multiple Sclerosis, [because] [t]here is also no evidence of marked limitation in physical functioning and in one of the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." Tr. 26.

To meet the requirements of Paragraph B, Plaintiff must show: "Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00G3b(iv))." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.09B. Thus, Plaintiff must show marked limitation in physical functioning as well as marked limitation in at least one area of mental/cognitive functioning.

Plaintiff argues that the absence of evidence regarding marked limitation in an area of mental functioning is due to the ALJ's failure to fulfill her duty to develop the record. *Brief* [#18] at 26. Plaintiff states that he "is confident that a psychological consultative examination involving psychological testing would establish a marked limitation in one of the areas listed." *Id.* However, as the Court found above, the ALJ was under no duty to further develop the record. Thus, Plaintiff's argument regarding Paragraph B fails because he has not shown that the ALJ failed to consider evidence in the record pertaining to this part of the Listing, and because Plaintiff fails to point to any other evidence in the record that could support this element.

Accordingly, the Court finds that the ALJ did not commit reversible error at step three of her analysis in connection with her evaluation of Paragraph B of Listing 11.09.

**D.     Step Four**

At step four, Plaintiff asserts two additional arguments.  First, the ALJ "erred by failing to make adequate findings at step four regarding the functional effects of [Plaintiff's] subjective symptoms, including pain, and by assigning RFC restrictions related only to his objective symptoms."  *Brief* [#18] at 27-31.  Second, the "findings of the ALJ regarding the weight to be afforded the opinion evidence did not comply with the regulations regarding the opinion of a treating physician, are not based on substantial evidence, and do not address the relevant factors set forth in the regulations."  *Id.* at 31-34.  The Court addresses each in turn.

**1.     Subjective Symptoms**

Plaintiff argues that the ALJ "erred by failing to make adequate findings at step four regarding the functional effects of [Plaintiff's] subjective symptoms, including pain, and by assigning RFC restrictions related only to his objective symptoms."  *Brief* [#18] at 27-31.  Plaintiff asserts that his "allegations of disability are based almost exclusively on his pain, fatigue, and cognitive deficits, all subjective symptoms that cannot be proved by objective evidence."  *Id.* at 30.

Pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), an ALJ has the "obligation to consider subjective allegations" by examining such factors as:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other

symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

"In evaluating the ALJ's analysis, we do not require technical perfection, but are guided by common sense." *Wahpekeche v. Colvin*, 640 F. App'x 781, 783-84 (10th Cir. 2016) (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)).

Plaintiff asserts that the ALJ only addressed the first factor, i.e., daily activities, and even then that she misevaluated it. *Brief* [#18] at 29 ("These activities establish nothing more than that [Plaintiff] was not bedridden."). It is true that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in substantial gainful activity, but such activities may be considered by the [Commissioner], along with medical testimony." (internal quotation marks omitted)). The ALJ here "was entitled to consider [Plaintiff's] regular and fairly extensive activities" and properly did so in making her determinations regarding the consistency of Plaintiff's testimony with medical and other evidence. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018); Tr. 29. Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's daily activities.

As for the other six factors, Plaintiff argues that the ALJ erred by not addressing them at all. *Brief* [#18] at 29. While the ALJ must link the factors of the statutes to

evidence, she is not required to perform "a formalistic factor-by-factor recitation of the evidence." *Wahpekeche*, 640 F. App'x 781, 783 (10th Cir. 2016) (citing *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004); quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

However, with one exception, Plaintiff does not direct the Court's attention to any evidence pertaining to any of these other factors which the ALJ may have overlooked. The only evidence to which Plaintiff points is his testimony at the hearing where he discussed his pain, fatigue, and concentration issues. *Brief* [#18] at 30 (citing Tr. 46-47, 51). The Court has generally recited Plaintiff's testimony regarding pain issues in connection with its discussion of Plaintiff's neck and back issues in Section III.A. above and generally recited Plaintiff's testimony regarding concentration issues in Section III.B.2. above. Regarding fatigue, Plaintiff testified, "[b]ecause of my MS, I get fatigued quite a bit and to the point where it will just come on. I'll have a spasm of some sort, then I have to take medication that actually puts me to sleep pretty much." Tr. 47. He also states that being able to wake up on time every morning to work is very difficult for him. Tr. 47.

In her RFC analysis, the ALJ clearly and thoroughly examined Plaintiff's referenced testimony, covering the issues Plaintiff notes here as well as much more. Tr. 27. In other words, these issues were not overlooked by the ALJ. Further, it appears that the ALJ took into account these subjective symptoms in formulating the RFC by, for example, limiting Plaintiff to sedentary work which (among other limitations) involved only simple and routine tasks, simple work-related decisions, occasional changes in routine work duties and tasks, and occasional interaction with the public in order to account for any mental impairments. Tr. 26; *see, e.g.*, *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (stating that it is an

acceptable approach for an ALJ to account for mental limitations "by limiting the claimant to particular kinds of work activity") (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)); *see also Lee v. Colvin*, 631 F. App'x 538, 543-44 (10th Cir. 2015) (holding that the ALJ did not commit harmful error in failing to provide "more specific references" to "pain in the RFC analysis" where the "record contain[ed] very limited references" to pain and where the ALJ limited the claimant to light work, thereby "adequately account[ing] for this limitation" in a way that "was consistent with the medical evidence"). Plaintiff has pointed to no evidence here beyond his hearing testimony to support a finding that the ALJ should have imposed additional restrictions, even evidence simply demonstrating that Plaintiff ever raised these subjective symptoms with any medical personnel.

Thus, Plaintiff's argument fails because he has not pointed to any other evidence that the ALJ purportedly overlooked and failed to link to the factors of the statute. *Grogan*, 399 F.3d at 1261-62. In other words, the ALJ was not required to discuss factors for which there was no supporting evidence in the record. In the absence of any specific indication from Plaintiff that the ALJ overlooked certain evidence, the Court cannot find that the ALJ committed reversible error by not formalistically addressing each of the factors. *See, e.g.*, *Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (rejecting argument that "the ALJ's RFC determination should have included [the plaintiff's] subjective complaints" where the ALJ found that the objective medical evidence did not support the plaintiff's "allegations concerning the . . . limiting effects of his pain" and the plaintiff did "not point to any medical evidence indicating his RFC should be more limited").

### 2. Treating Physician

Plaintiff argues that the "findings of the ALJ regarding the weight to be afforded the

opinion evidence did not comply with the regulations regarding the opinion of a treating physician, are not based on substantial evidence, and do not address the relevant factors set forth in the regulations." *Brief* [#18] at 31-34. Specifically, Plaintiff argues that the ALJ should have given more than "partial weight" to the opinion of Plaintiff's treating neurologist Beverly Gilder, M.D. ("Gilder").

"Generally, a treating physician's opinion receives more weight than other physicians' opinions since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence." *Brownrigg v. Berryhill*, 688 F. App'x 542, 548 (10th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks and brackets omitted). The evaluation of a treating physician's opinion requires "a sequential two-step inquiry, each step of which is analytically distinct." *Brownrigg*, 688 F. App'x at 548 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)). "First, the ALJ must consider whether the opinion is entitled to controlling weight." *Brownrigg*, 688 F. App'x at 548. This analysis requires findings that the physician's opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and consistent with other substantial evidence in the record." *Id.* (quoting *Krauser*, 638 F.3d at 1330) (internal quotation marks and brackets omitted). "Second, if the opinion is not entitled to controlling weight, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in 20 C.F.R. §§ 404.1527 and 416.927 . . . for the weight assigned." *Id.* (internal quotation marks, brackets, and footnote omitted). Those factors are:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

In relevant part, the ALJ stated here:

[Dr. Gilder] completed Physical RFC Assessments in March of 2016 and in September of 2017. Dr. Gilder opined that the claimant was limited to sedentary work with further limitations, such as being incapable of even "low stress" jobs and that he could sit about two hours in an eight-hour work day. Dr. Gilder further found that the claimant would be absent from work more than four days per month. The undersigned gives this opinion partial weight in that it is partially supported by the record as a whole, which shows that the claimant's impairments limit him to performing less than sedentary exertional work. However, Dr. Gilder's limitations are too extreme. For example, in August of 2017, the claimant was found to stand and walk without hesitation. Furthermore, the claimant's multiple sclerosis was found to be stable in July of 2016 and January of 2017. Diagnostic testing from December of 2016 indicates no progression of the disease. Therefore, the undersigned gives this opinion partial weight.

Tr. 29.

Plaintiff concedes that the ALJ generally adopted in the RFC most of Dr. Gilder's opinion regarding his objective impairments. *Brief* [#18] at 32. However, Plaintiff contests the ALJ's RFC evaluation to the extent the ALJ implicitly rejected Dr. Gilder's comments

regarding subjective impairments.  *Id.*  Plaintiff argues that "the ALJ appeared to pick and choose the evidence she cited and the criteria she relied on to evaluate that evidence solely in order to support her preconceived conclusion that [Plaintiff] was not disabled . . . ."  *Reply* [#20] at 6.  However, again, much like the Court has repeatedly discussed in previous sections of its analysis, Plaintiff has not pointed to any evidence supportive of the parts of Dr. Gilder's opinion the ALJ implicitly rejected and that the ALJ should have considered in connection with this issue and purportedly did not.  Even if the ALJ erred by failing to explicitly discuss this portion of Dr. Gilder's opinion, Plaintiff has not demonstrated that the error is harmful by pointing to evidence purportedly overlooked by the ALJ that would support a remand.  *See Hodges*, 568 F. App'x at 641.

Because Plaintiff has not shown that the record supports the more severe restrictions opined by Dr. Gilder, the Court finds that the ALJ did not commit reversible error on this issue

E.    **Step Five**

Plaintiff argues that the ALJ "erred because she failed to find that [Plaintiff] was disabled even though the Commissioner did not present substantial evidence that the jobs the vocational expert listed as being available to [Plaintiff] existed in significant numbers in the economy."  *Brief* [#18] at 34-36.  Plaintiff's argument appears to be that the VE did not specifically testify that the jobs he listed as falling within Plaintiff's RFC existed in significant numbers in the local or national economy.  *Id.* at 35.  However, although it is indeed the Commissioner's burden to show that the jobs listed by a VE exist in significant numbers in the local or national economy, the Court is aware of no authority, and none is presented

by Plaintiff, that the VE must actually say those words at the hearing.  *See Yuckert*, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy.").

The thrust of Plaintiff's argument is that the jobs listed by the ALJ do not exist in significant numbers, an issue which the Court may determine as a matter of law.  *See, e.g.*, *Jackson v. Colvin*, No. 13-cv-01927-KLM, 2014 WL 5504755, at *8-9 (D. Colo. Oct. 31, 2014) (collecting cases).  The ALJ listed four jobs and their approximate availability both nationally and locally: (1) address clerk, with 15,000 jobs nationally and 400 jobs locally; (2) call out operator, with 13,000 jobs nationally and 200 jobs locally; (3) microfilm document preparer, with 30,000 jobs nationally and 300 jobs locally; and (4) tube clerk, with 8,000 jobs nationally and 300 jobs locally.  Tr. 31; *see also* Tr. 58-59 (discussion by the VE of these four occupations and the approximate availability of each occupation nationally and locally).

Thus, the Court must determine if these positions that the ALJ determined Plaintiff could perform constitute a significant number of jobs as a matter of law.  When considering whether a significant number of jobs exist, "the relevant test is *either* jobs in the regional economy *or* jobs in the national economy."  *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009) (emphasis in original).  Accordingly, an ALJ may "look[ ] to the national economy—not just a local area" in determining whether there is a significant number of available jobs.  *Id.* at 1274.  Because the Tenth Circuit has not drawn a bright line above which the number of jobs is significant, the ALJ may consider a variety of factors when determining if there is a significant number of jobs in the regional and national economies.  *See id.* at 1274 n.2.  Those factors are: "the level of claimant's disability; the reliability of

the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (holding that a showing of 650 to 900 available jobs was not sufficient to show a significant number of jobs without evaluating enumerated factors) (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (stating that no reasonable fact finder could find that 152,000 jobs available nationally was an insignificant number); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) ("Here, the vocational expert testified that [the claimant] is capable of performing any of the approximately 650 jobs in the fields of surveillance monitoring, addressing, and document preparation that exist in Iowa, or one of the 30,000 such jobs that exists nationwide. The ALJ found this to be a significant number, and we agree."); *Knudson v. Astrue*, 10-cv-02905-PAB, 2012 WL 1079130, at *10 (D. Colo. Mar. 30, 2012) ("[T]he combination of 1194 positions available in Colorado with 79,900 positions available nationally is more than a significant amount of existing jobs that plaintiff is capable of performing").

However, the *Trimiar* factors "are not a mandatory list in which in every case each factor must be mechanically analyzed and applied." *Jansen v. Astrue*, No. 12-cv-00753-LTB, 2013 WL 5338505, at *12 (D. Colo. Sept. 24, 2013) (citations omitted). When, as a matter of law, a significant number of jobs do exist, the ALJ and the Court need not engage in an analysis of the *Trimiar* factors. *See Gonzales v. Astrue*, No. 08-cv-00518-REB, 2009 WL 440945, at *3 n.3 (D. Colo. Feb. 19, 2009). The Court has previously held that 13,500 positions is a significant number as a matter of law. *See, e.g.*, *Longrear v. Colvin*, 26 F. Supp. 2d 1066, 1070-71 (D. Colo. 2014) (noting that the argument that the 13,500 jobs

available nationally, "either alone or combined with those available regionally" did "not constitute a significant number" would be meritless); *Taylor v. Astrue*, No. 11-cv-01425-CMA, 2012 WL 1520179, at *8 (D. Colo. April 30, 2012) ("Between the Surveillance system monitor job and the call out operator, the ALJ identified over 25,000 jobs available nationally. The Court finds that this constitutes a 'significant number' of jobs that Plaintiff is capable of performing.") (citations omitted); *see also Gutierrez v. Comm. of Social Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) ("The ALJ did not err in concluding that 2,500 jobs in the State of California constituted a significant number of jobs in the region where [claimant] lived and that 25,000 jobs also signifies a significant number of jobs in several regions of the country."); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (stating that "it appears to be well-established that 1,000 jobs is a significant number."); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding that 1350 jobs in the local economy was a significant number); *Mendoza v. Colvin*, No. 13-CV-279-SM, 2014 WL 4146808, at *9 (D.N.H. Aug. 19, 2014) (holding that 20,700 jobs in the national economy is a "significant number"); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (affirming denial of social security benefits for claimant when VE testified that 16,763 jobs existed in the national economy and 63 existed in the Finger Lakes region); *Daniels v. Astrue*, No. 10 Civ. 6510(RWS), 2012 WL 1415322, at *2 (S.D.N.Y. Apr. 18, 2012) (affirming denial of social security benefits when VE testified that claimant could work as a surveillance system monitor for which 1,200 jobs existed in the New York City area and 25,000 jobs existed nationally). Here, the ALJ found that 66,000 jobs nationally and 1,200 jobs locally exist in connection with the four occupations identified by the VE. The Court finds that these constitute significant numbers. *See Taylor*, 2012 WL 1520179, at *8.

Therefore, the ALJ did not commit reversible error by concluding at step five that there are jobs existing in significant numbers in the national and/or local economies that he can perform.  Tr. 31-32.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.


Dated:  March 3, 2020                           BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge